UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CONSUMER PROGRAM | ) | |
| ADMINISTRATORS, INC., | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 09 C 3731 |
| | ) | Judge Blanche Manning |
| | ) | |
| K.B. PARRISH & CO., L.L.P. | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Consumer Program Administrators, Inc. ("CPA") brought suit against K.B. Parrish & Co., LLP, alleging negligence in connection with a personal financial statement that Parrish prepared for an individual named James Rathmann and his car dealerships. Parrish moves to dismiss the complaint on several grounds, including that the court does not have personal jurisdiction over Parrish and that venue is not proper in the Northern District of Illinois. Alternatively, Parrish moves, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the complaint on the ground that it fails to state a claim. Finally, Parrish asserts that if the complaint is not dismissed, CPA should be required to file a more definite statement under Fed. R. Civ. P. 12(e). For the reasons stated below, Parrish's motion is granted in part and denied in part.

**I.    Facts**

In general, the complaint alleges that Rathmann retained Parrish to prepare personal financial statements for his wife and him. CPA alleges that when Parrish was retained, it knew that Rathmann intended to use the personal financial statements to assist in obtaining financing from third parties for the continuing operations of his two closely-held car dealerships, Jim Rathmann Chevrolet ("JRC") and Palm Bay Chevrolet ("PBC"). According to the complaint, the values of the Rathmanns' assets as stated in the personal financial statements prepared by Parrish were false, and Parrish knew or should have known that the stated asset values were false. Moreover, Parrish, despite knowing that the financial statements were going to be presented to third parties in order to obtain financing, failed to correct the false asset values or address the reliance by third parties on those purportedly false asset values.

CPA alleges that it reasonably relied on the false personal financial statements when it agreed to loan $2 million to Rathmann and his car dealerships. Rathmann defaulted on the note and allegedly breached other agreements entered into by the parties at the time the note was executed. In 2007, CPA sued Rathmann and his dealerships in the Northern District of Illinois, 07 C 3983, *Consumer Program Administrators, Inc. v. Jim Rathmann Chevrolet, et al.*, which

was pending before Judge Lefkow. Rathmann declared personal bankruptcy and PBC Investments, LP, another defendant, also declared bankruptcy. A default judgment in an amount over $4 million was entered against Jim Rathmann Chevrolet, but CPA has not recovered any of those damages.

Parrish alleges that it was "not until long after Rathmann and PBC filed for bankruptcy in November 2007. . . that CPA discovered and learned, for the first time," that the asset values stated in the personal financial statements were materially false and that it was Parrish, not Rathmann or anyone else, which calculated the false values.

**II.     Standard**

   A.     Rule 12(b)(2)

In ruling on a motion to dismiss pursuant to Rule 12(b)(2) based on lack of personal jurisdiction, the court may consider matters outside the pleadings, such as affidavits and other materials submitted by the parties. *See* Fed. R. Civ. P. 12(b). The plaintiff bears the burden of establishing personal jurisdiction. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987). In making its determination regarding personal jurisdiction the court must resolve any factual disputes in the plaintiff's favor, but must accept the allegations in the complaint as true only to the extent that they are not controverted by other evidence in the record. *Id*. The court must also accept uncontested jurisdictional facts presented by the defendant as true. *Connolly v. Samuelson*, 613 F.Supp. 109, 111 (N.D.Ill. 1985).

   B.     Rule 12(b)(6)

Rule 12(b)(6) permits a motion to dismiss a complaint for failure to state a claim upon which relief can be granted. To state such a claim, the complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court accepts the allegations in the complaint as true, viewing all facts, as well as any inferences reasonably drawn therefrom, in the light most favorable to the plaintiff. *See Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000).

The Seventh Circuit has recently synthesized the relevant Supreme Court caselaw as follows:
> So, what do we take away from *Twombly*, *Erickson*, and *Iqbal*? First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or

conclusory legal statements.

*Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

Moreover, the Brooks court stated that the "plausibility requirement applies across the board, not just to antitrust cases." *Id*. However, the court should also take into consideration the complexity of the case when addressing whether a complaint alleges sufficient facts. *See Limestone Dev. Corp. v. Village of Lemont, Ill*., 520 F.3d 797, 803 (7th Cir. 2008) (amount of factual allegations required to state a plausible claim "will depend on the type of case" and "[i]n a complex antitrust or RICO case a fuller set of factual allegations than found in the sample complaints in the civil rules' Appendix of Forms may be necessary"). To be facially plausible, a plaintiff must plead factual content that "allows the court to draw the reasonable inference that the defendant is liable." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

**III.    Analysis**

    A.    <u>Personal Jurisdiction under Fed. R. Civ. P. 12(b)(2)</u>

Parrish first argues that the court does not have personal jurisdiction over it. A federal district court exercising diversity jurisdiction has personal jurisdiction over a defendant "only if a court of the state in which it sits would have such jurisdiction." *RAR*, 107 F.3d at 1275 (citation omitted). Because Illinois' long-arm statute extends to the maximum extent permitted by the Illinois and United States constitutions, jurisdiction under the long-arm statute is coextensive with federal due process requirements. 735 ILCS 5/2-209(c); *see, e.g., RAR, Inc. v. Turner Diesel Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997).[1] Thus, "the personal jurisdiction analysis collapses into a federal due process inquiry." *Foley v. Yacht Management Group, Inc.*, No. 08 C 7254, 2009 WL 2020776, at *2 (N.D. Ill. Jul. 9, 2009)(citations omitted).

The Due Process Clause of the Fourteenth Amendment to the United States Constitution limits when a state may assert personal jurisdiction over nonresident defendants. *Pennoyer v. Neff*, 95 U.S. 714, 733 (1878). To exercise personal jurisdiction consistent with federal due process, a defendant must have (1) "certain minimum contacts with the forum state such that (2) the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l. Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Under the "minimum contacts" test, a defendant may be subject to either specific or general jurisdiction. Specific jurisdiction refers to jurisdiction over a defendant if a suit "arises out of" or "relates to" the cause of action even if those contacts are "isolated and sporadic." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985). General jurisdiction is applicable

---

[1] Under the Illinois long-arm statute, Illinois state courts have general jurisdiction over nonresident defendants "doing business" in Illinois and specific jurisdiction over nonresident defendants if the claims arise from their "transactions" in Illinois. 735 ILCS §§ 5/2-209(a) & (b).

when the lawsuit neither arose from nor was related to the defendant's contacts with the forum state. *RAR, Inc.*, 107 F.3d at 1277. Such jurisdiction is permitted only where the defendant has "continuous and systematic general business contacts" with the state. *Id*.

In addition, the Seventh Circuit has held that "by agreeing to designate an agent for service of process, . . . foreign companies can waive this requirement of 'minimum contacts.'" *Employers Ins. of Wausau v. Banco De Seguros Del Estado*, 199 F.3d 937, 943 (7th Cir. 1999)(citation omitted). Indeed, in *Employers Ins. of Wausau*, the court concluded that "[b]y designating a local agent to serve process, Banco knowingly waived its right to dispute personal jurisdiction." *Id*.

Here, it is undisputed that Parrish designated an agent in Illinois for service of process. Parrish does not even mention the *Employers Ins. of Wausau* case in its reply let alone attempt to distinguish it. Based on Seventh Circuit caselaw, then, as stated in *Employers Ins. of Wausau*, the court concludes that Parrish knowingly waived its right to dispute personal jurisdiction. Accordingly, Parrish's motion to dismiss based on a lack of personal jurisdiction is denied.

B.      Venue under Fed. R. Civ. P. 12(b)(3)

Parrish argues in the alternative that venue is improper in the Northern District of Illinois. In cases founded upon diversity jurisdiction, § 1391(a) provides three forums in which venue is proper: (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought. *Id.* § 1391(a). Parrish argues that under none of these factors is venue proper because: (1) it does not reside in the Northern District of Illinois; (2) neither a substantial part of the events or omissions giving rise to the claim nor a substantial part of property that is the subject of the action is situated in the Northern District of Illinois and (3) the court does not have personal jurisdiction over it.

The court, however, as just discussed, does have personal jurisdiction over Parrish. Thus, venue is appropriate under 28 U.S.C. § 1391(a)(3) because the court has personal jurisdiction over Parrish and "there is no district in which the action may otherwise be brought" under subsections (1) and (2). Accordingly, the court denies Parrish's motion to dismiss for lack of venue.

C.      Failure to State a Claim under Fed. R. Civ. P. 12(b)(6)

Alternatively, Parrish argues that the court should dismiss the complaint under Rule 12(b)(6) for failure to state a claim. The standard for deciding whether the court should grant a motion to dismiss under Rule 12(b)(6) is set forth above and will not be repeated here. The court

notes that the defendant incorrectly states that "[d]ismissal is properly granted if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations." Motion at 9, Dkt. #14. The *Bell Atlantic* court, however, expressly "retired 'the oft-quoted *Conley* formulation.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1082 (7th Cir. 2008)(citations omitted).

       1.    *Statute of Limitations*

Parrish first argues that because Indiana has the most significant relationship to this action, its law should apply and therefore CPA's complaint is barred by the applicable Indiana statute of limitations. CPA responds that because statutes of limitation are procedural in nature, "the limitations statutes of the forum will usually apply, even though the cause of action to which they are applied may have arisen in and been governed by the substantive law of another jurisdiction." *Kalmich v. Bruno*, 553 F.2d 549 (7th Cir. 1977). Thus, CPA contends, the Illinois and not the Indiana statute of limitations applies. Parrish appears to have been convinced by this argument as it fails to discuss the statute of limitations argument in its reply. Because the argument appears to have been abandoned by Parrish, the court will not address it.

       2.    *Choice of Law*

Parrish also asserts that the court should dismiss Count I, which alleges negligent misrepresentation, because, under Indiana law, CPA has failed to state a claim. Specifically, Parrish asserts that, under Indiana law, a plaintiff may only recover against an individual who negligently makes representations or gives advice if there is privity of contract between the plaintiff and the professional, or if the professional had actual knowledge that the plaintiff would be affected by the representations made. *Querrey & Harrow, Ltd. v. Transcontinental Ins. Co.*, 861 N.E.2d 719, 722 (Ind. App. Ct. 2007). According to Parrish, because CPA has failed to allege privity or that any type of relationship existed between CPA and Parrish, CPA cannot show that Parrish knew that CPA would be relying on the personal financial statements it created for the Rathamnns.

CPA responds that Florida and not Indiana law applies. As noted recently by the Seventh Circuit:

> In most U.S. jurisdictions, even those that use a "most significant relationship" test to resolve conflict of laws issues in tort suits, there is a practical presumption that the law of the place where the tort occurred ("*lex loci delicti*") governs the substantive questions in the suit. *E.g., Carris v. Marriott International Inc.*, 466 F.3d 558, 560 (7th Cir. 2006) (Illinois law) (describing *lex loci delicti* as the "default rule" of choice of law in tort cases even in jurisdictions that have embraced "most significant relationship" or other alternative choice of law rules); *Spinozzi v. ITT Sheraton Corp.*, 174 F.3d 842, 844-45 (7th Cir. 1999) (same); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1016 (7th Cir. 2002) (Indiana law).

> And the place where the tort occurred is where the injury occurred, . . . rather than where the conduct . . . that caused the injury occurred; for "there is no tort without an injury."

*Abad v. Bayer Corp.*, 563 F.3d 663, 669 (7th Cir. 2009)(certain citations omitted). CPA alleges that its injury occurred in Florida, *see* Complaint at ¶37, and Parrish does not dispute this. Thus, because the parties agree that the injury occurred in Florida, the court will apply the law of Florida.

Parrish argues in its reply brief that even if Florida law applies, CPA cannot state a claim for negligent misrepresentation against Parrish because CPA has failed to allege that Parrish knew about the loan to Rathmann or delivered the financial statements that they created to CPA. Under Florida law, an accountant's "liability [for negligent misrepresentation] should extend not only to those with whom the accountant is in privity or near privity, but also to those persons, or classes of persons, whom he knows and intends will rely on his opinion, or whom he knows his client intends will so rely." *First Florida Bank, N.A. v. Max Mitchell & Co.*, 558 So. 2d 9, 15 (Fla. 1990). Here, CPA alleges that Parrish "knew that Rathmann wanted to secure loans in connection with funding the operations of the Rathmann Entities" and "that Rathmann intended to use the [personal financial statements] to secure such loans by providing the [personal financial statements] to third parties, including banks as well as companies (such as CPA) that loaned money to dealerships and their owners in connection with the provision and administration of automobile insurance and warranty products." Complaint at ¶ 10. The court concludes that this allegation is sufficient to state a claim for negligent misrepresentation under Florida law. Accordingly, Parrish's motion to dismiss this count is denied.

### 3. *Attorney's Fees and Punitive Damages*.

Parrish also asserts that CPA fails to allege the requisite intent to recover punitive damages and that CPA has no basis upon which to recover attorney's fees. As to the punitive damages, Florida law states that: "[i]n any civil action, no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages." Fl. Stat. Ann. § 768.72. A district court in Florida has recently summarized whether § 768.72 is applicable in a diversity action pending in federal court as follows:

> The Eleventh Circuit has held that the portion of Section 768.72 of the Florida Statutes prohibiting pleading punitive damages in the initial complaint conflicts with Federal Rule of Civil Procedure 8(a)(3) which provides, "A pleading that states a claim for relief must contain ... a demand for relief sought ...." *Cohen v. Office Depot, Inc.*, 184 F.3d 1292, 1298 (11th Cir. 1999), *vacated in part on other grounds*, 204 F.3d 1069, 1076-77, 1083 (11th Cir. 2000). The court has also determined that the substantive pleading standard of Section 768.72 (requiring a "reasonable showing" that demonstrates "a reasonable basis for recovery of such

damages") did not conflict with Federal Rule of Civil Procedure 8(a)(2) (permitting a "short and plain statement of the claim") because a prayer for punitive damages is not a "claim" within the meaning of that Rule. *Cohen*, 184 F.3d at 1297. Thus, as suggested by the Eleventh Circuit in a later case interpreting *Cohen*, the substantive pleading requirements for punitive damages in Section 768.72 of the Florida Statutes remains valid law. *Porter v. Ogden, Newell & Welch*, 241 F.3d 1334, 1340-41 (11th Cir.2001) (explaining the holding in Cohen that "the pleading rules set forth in Fed. R. Civ. P. 8(a)(3) preempt § 768.72's requirement that a plaintiff must obtain leave from the court before including a prayer for punitive damages" but nevertheless applying the rule that "[u]nder Florida law, merely setting forth conclusory allegations in the complaint is insufficient to entitle a claimant to recover punitive damages", and "a plaintiff must plead specific acts committed by a defendant").

*Hogan v. Provident Life & Acc. Ins. Co.*, No. 6:08-cv-1897-Orl-19KRS, 2009 WL 2169850, at *5 (M.D. Fla. Jul. 20, 2009).

Parrish argues that CPA has failed to allege the gross negligence required under Florida law and federal pleading standards. CPA points to the following allegations in support of its request for punitive damages:

- Parrish knew (or through the exercise of reasonable care, should have known) that the stated "values" of the Rathmann Entities in the [personal financial statements] were false. . . .Yet Parrish included those false "values" in the [personal financial statements], without mentioning the contrary information, undertaking any effort to reconcile the stated "values" with the contrary information, or even requesting any information from the Rathmanns regarding the actual "values" of the Rathmann Entities. Complaint,¶ 19.
- Despite learning of and/or receiving that additional information, Parrish failed to attempt or undertake any measures to correct those false "values" or address the potential reliance upon those false "values" by CPA or any third parties. Parrish, for example, failed to issue a revised financial statement and/or undertake any measures to notify Rathmann, the Rathmann Entities, or any companies (like CPA) that received and relied upon the [personal financial statements] in determining whether to lean funds to Rahtmann and the Rathmann Entities. Complaint, ¶ 23.

In addition, the court notes that CPA alleges that while "Parrish . . . knew that the Rathmanns would give the [personal financial statements] to [third parties to secure loans] . . . Parrish did not include any disclaimers or qualifications in the [personal financial statements]" as it had in the past. Complaint, ¶ 24-25.

The court concludes that these allegations provide a sufficient factual basis for the request for punitive damages such that it should not be stricken.

Regarding the attorney's fees, Parrish correctly notes that "[t]he general rule in American state and federal courts is that, except for those cases that fall under a statute or contract which authorizes the award of attorneys' fees, each party bears his own costs incurred in the prosecution or defense of a claim." *Turner v. Beneficial Nat. Bank*, 405 F. Supp. 2d 929, 931 (N.D. Ill. 2005)(citation omitted). CPA responds that it may seek to recover attorney's fees as sanctions for bad faith conduct. CPA cites no authority, however, for the proposition that it would be entitled to payment of all of its attorney's fees based on an isolated episode of purported bad faith conduct by the opposing party. If CPA believes that Parrish has exhibited bad faith at some point in this litigation, it may seek whatever relief it deems appropriate. However, in the absence of a statute or a contract providing for the recovery of attorney's fees, the request for attorney's fees is stricken.

> D. <u>Motion for More Definite Statement under Rule 12(e)</u>.

Parrish also asserts in its opening motion that CPA should at least be required to file a more definite statement. Although CPA responded to the argument, Parrish appears to have abandoned the argument as it does not mention it in its reply. Accordingly, the court will not address it.

**IV. Conclusion**

For the reasons set forth herein, Parrish's motion to dismiss [13-1] is granted in part and denied in part. Parrish's motion to strike Exhibits A and B to the plaintiff's response brief [18-1] is denied as moot.

**ENTER:**

**Date: December 9, 2009**

_____
**Blanche M. Manning**
**U.S. District Court Judge**